Pior, Tutor, vs. Giddens et als.

---

No. 12,477.

A. S. B. PIOR, TUTOR, VS. D. M. GIDDENS, ET ALS.

The separate creditor of either spouse can not, after dissolution of the community, deal with an undivided interest of his debtor in any specific piece of property belonging to the community, proceed against it by direct seizure, sell it and apply its proceeds to payment of his debt.

His proper course is to force by appropriate proceedings a final settlement and liquidation of the community, and then to subject, by process of law, the interest of his debtor thus found to the satisfaction of his claim.

A wife, owning by inheritance an undivided half of a plantation, purchases during the marriage from her co-heirs their interest. The interest so purchased fell into the community of acquets and gains, unless declared and shown to be purchased for her separate account with paraphernal funds.

A husband, who, after dissolution of the community by death of the wife, pays out of his own funds debts of the community, becomes subrogated to the rights of the creditors so paid.

Against his claim for reimbursement of the debts thus paid—he having the administration of the property—prescription does not run until a liquidation and settlement of the community.

Where the separate property of the wife during her lifetime is administered by the husband, the debts incurred in such administration, such as expenses of cultivating a plantation, are community debts, and the revenues assets of the community.

APPEAL from the Ninth Judicial District Court for the Parish of Red River. *Hall, J.*

*Wilkinson & Wilkinson* and *John I. Teer* for Plaintiff, Appellant.

*J. C. Egan, Sr.*, for Defendants, Appellees.

Argued and submitted May 10, 1897.
Opinion handed down December 29, 1897.
Judgment amended and rehearing refused March 21, 1898.

The opinion of the court was delivered by

BLANCHARD, J.   In March, 1889, D. M. Giddens contracted a loan of money from the plaintiff and to secure payment thereof executed a mortgage on certain lands forming what is known as "the Sprowls Place" in Red River parish.

This debt remaining unsettled, an action was brought in 1893 to enforce its payment.

A short time prior to the filing of that suit Giddens made what purported to be a final settlement with his sons, R. A. and A. S. Giddens, whose tutor he had been, in which settlement he delivered to them, *as their inheritance*, along with other property, the Sprowls Place, which he had a few years previously mortgaged, *as his own property*, to plaintiff.

Because of this settlement with his sons and this delivery of the mortgaged property to them, the sons were made parties defendant, along with the father, in the action to enforce payment of the debt for borrowed money, and the settlement and delivery was asked to be avoided in so far as the same affected the rights of the complaining creditor.

In that litigation the judgment of the court below was in favor of plaintiff, decreeing recovery of the amount sued for, recognizing the mortgage as existing on the interest of D. M. Giddens in the Sprowls Place, which was fixed at an undivided one-third thereof, and avoiding the settlement and delivery of property made by Giddens to his sons, so far as the same affected plaintiff's right as mortgage creditor to the extent his mortgage was recognized in the judgment.

From this judgment R. A. and A. S. Giddens prosecuted an appeal to this court, and in 1894 a decree was handed down reversing

in part the judgment appealed from and directing that the rights of the plaintiff under the mortgage be restricted to the interest of D. M. Giddens in the community between himself and his deceased wife, to be ascertained by proper proceedings in the court below, to which court the case was remanded for the purpose. In this remanding the rights of the plaintiff were fully reserved to make effectual for the satisfaction of his mortgage the interest of D. M. Giddens in the community. 46 An. 1406.

Following this the present suit was instituted, the purpose of which seems, first, to have it decreed that D. M. Giddens owns individually an undivided one-third of the property which he had mortgaged to plaintiff in 1889, and subjecting same to the satisfaction of the mortgage debt; and, failing in this, second, to have determined the interest of said Giddens in the community between himself and his deceased wife, to the end that the same may be made amenable to plaintiff's claim under the hypothecation aforesaid.

It is clear that the inquiry herein must be limited to the latter. The decree of this court in the former suit directs precisely that the rights of plaintiff under the mortgage be restricted to the interest of the elder Giddens in the community between himself and his dead wife, to be ascertained according to law. The intention and declaration of our judgment in that controversy was that the case be remanded for a settlement of community affairs.

This involved, first, ascertaining what were the rights of ownership of the community in the property which D. M. Giddens had mortgaged to plaintiff; and, second, how his interest in the share owned by the community might be affected by indebtedness, if any, due by him to the community, or by the community to him, as the case might be. And then, finally, should anything be left to Giddens, as the result of such settlement of community affairs, to apply same to the satisfaction of plaintiff's mortgage claim. The opinion of the court declared that the community between the husband and wife had never been settled and liquidated, and, consequently, that the rights of the spouses had not been fixed and determined. It was correctly held that the separate creditor of either spouse has the right, after the dissolution of the community, to have the community liquidated; that he can not deal with an undivided interest of his debtor in any specific piece of property belonging to the community, proceed against it by direct seizure, sell it and apply the proceeds to

payment of his debt; that his proper course is to force by appropriate proceedings a final settlement and liquidation of the community, and then to proceed legally to subject the interest of his debtor thus found to the satisfaction of his debt. 46 An. 1145.

Thus is pointed out clearly the only course to be pursued in this later edition *of a long standing* litigation.

Robert H. Armistead died in 1868. He left surviving him a widow, Louisa Armistead. The community between them owned at the death of the husband several small Red river plantations. There were three children of this marriage surviving and of age when the father died. They were, Martha E., Mary Jane and John H. Armistead.

The first was married to J. W. Sandiford. Mary Jane Armistead had married David Briggs, who died in 1862. Three children were born of this marriage, of whom two were living when the grandfather, Robert H. Armistead, died.

Briggs owned some cotton which was sold after the war by Robert H. Armistead and netted fifteen hundred dollars. He retained this sum in his hands and owed it at his death—one half to Mrs. Briggs, widow in community, the other half to the Briggs children.

Mrs. Briggs, the widow, in 1868, just after the death of her father, married D. M. Giddens. Two children sprang from this union—Robert A., born in February, 1870, Albert S. in August, 1872

One of the Briggs children died in 1871. His share of the cotton money (fifteen hundred dollars) was thereupon inherited by his mother, his surviving sister of the full blood, Ella Briggs, and his brother of the half blood, Robert A. Giddens. In what proportion, it is not material to inquire. The other Giddens child had not then been born.

Following the death of Robert H. Armistead, his widow and heirs effected a partition of the estate. The widow and her daughter Mary Jane (Mrs. Giddens) were awarded as their share what was known as the " Armistead place"—the home of the family. Mrs. Sandiford and J. H. Armistead took other property.

By this arrangement Mrs. Louisa Armistead and Mrs. Giddens acquired the Armistead plantation in the proportion of three-fourths to the former and one-fourth to the latter. As widow in community Mrs. Armistead owned in her own right (there being no debts) one-half of the whole place, or three-sixths. Mrs. Giddens, as one of .

three heirs, inherited one-third of one-half, or one-sixth of the whole. They each owned a like interest in the property which fell to Mrs. Sandiford and J. H. Armistead in the partition. The parties were effecting an exchange. The two-sixths interest owned by Mrs. Sandiford and J. H. Armistead in the Armistead place was exchanged for the interest Mrs. Armistead and Mrs. Giddens owned in the other property. The latter received, relatively to each other, the two-sixths interest of the former in the Armistead place in the same proportion that three-sixths bear to one-sixth.

Thus it was that Mrs. Armistead's interest thereafter in the Home place was three-fourths and Mrs. Giddens one-fourth.

Mrs. Louisa Armistead died in September, 1871. She had made a will bequeathing her interest in the Armistead place to her daughter, Mrs. Giddens, but the probate of this will was successfully resisted by the other two heirs on the ground of informality, etc. This left her estate to be inherited according to law by her three children. Mrs. Giddens, as one of the heirs, inherited one-third of her mother's interest in the Armistead place. As this interest was three-fourths, it thus appears that Mrs. Giddens, by the death of her mother, became the owner of another fourth in the property— making her the owner of an undivided one-half of the place, and Mrs. Sandiford and J. H. Armistead each the owner of an undivided fourth.

In December, 1871, a settlement of Mrs. Armistead's succession was effected in this wise: Mrs. Sandiford and J. H. Armistead sold to their sister, Mrs. Giddens, their interest in the Armistead place for three thousand three hundred dollars. The interest thus purchased fell into the community existing between D. M. Giddens and his wife. C. C. 2402; De Sentmanat vs. Soulé, 33 An. 609.

The act of sale and transfer does not state the property thus acquired was for the separate account of the wife, nor that its purchase was a reinvestment of paraphernal funds, and there is no proof of either in the record. No cash was actually paid, but fifteen hundred dollars of the three thousand three hundred dollars was acknowledged as cash received by D. M. Giddens, being the amount due by the succession of Robert H. Armistead on account of the Briggs cotton sold as hereinbefore stated, and the succession and heirs released from liability therefor.

By this arrangement the community between Giddens and his wife

became indebted to Mrs. Giddens (formerly Briggs) and the surviving Briggs child for the amount. For the remaining eighteen hundred dollars of the three thousand three hundred dollars purchase money a note was executed in favor of Mrs. Sandiford for nine hundred dollars, another in favor of Lisso & Bro. for six hundred and twenty-nine dollars and fifty-eight cents, and a third in favor of J. H. Armistead for two hundred and seventy-one dollars and forty-two cents—all payable January 1, 1873, with eight per cent. interest from date of sale. The note to Lisso & Bro. was the assumption of a debt J. H. Armistead owed them. This eighteen hundred dollars represented by the three notes was a community obligation.

In January, 1871, D. M. Giddens had purchased in his own name seventy-one acres of land adjoining the Armistead place from Tally Brown and wife. This property, purchased after the marriage, fell into the community. Its price was six hundred dollars. One-half of this sum was advanced by Mrs. Louisa Armistead as a gift to her daughter, Mrs. Giddens. Thus the community became indebted to the wife for three hundred dollars, and it is a claim now due her heirs by the community. The seventy-one acres so purchased was added to and became part of the Armistead place. This place originally embraced two hundred and ten acres. With the seventy-one acres added its area broadened to two hundred and eighty-one acres. It thus appears that in acreage the land bought from Brown (seventy-one acres) constituted one-fourth of what was known as the Armistead or Giddens place at the death of Mrs. Giddens.

And it appears that in value it constituted more than one-fourth, for it was appraised at fourteen hundred and twenty dollars on the inventory taken in the succession of Mrs. Giddens shortly after her death, while the original Armistead place was appraised at four thousand nine hundred and twenty-five dollars.

Mrs. Giddens died in October, 1873. Ella Briggs died in December of the same year.

Robert A. and Albert S. Giddens, sons of the first and half brothers of the latter, were their only heirs. Thus fell to them their mother's separate estate, as well as the claim against the community for the fifteen hundred dollars due for the Briggs cotton. Also, the residuary interest (if any) of their mother in the community property after payment of the debts of the community.

The community owned at the death of Mrs. Giddens, as we have

seen, one-half of the Armistead plantation and the seventy-one acres bought from Brown and added to the place.

D. M. Giddens cultivated the plantation in 1874 and 1875 for his own account, and at the close of the latter year he exchanged the whole of it for the Sprowls place owned by J. H. Beaird. He had qualified as natural tutor to his minor children, and a family meeting, convoked in their interest, recommended the exchange on their behalf.

The Sprowls place contained six hundred and forty-three acres. The Armistead place, though much smaller, was considered more valuable, and Beaird, owner of the Sprowls place, as a further consideration of the exchange, assumed payment of a mortgage indebtedness for eight hundred and seventy-nine dollars resting upon the Armistead place. This eight hundred and seventy-nine dollars was a debt due by the community that had existed between Giddens and his wife. It represented the note executed to Lisso & Bro. for six hundred and twenty-nine dollars and fifty-eight cents, and the one executed in favor of J. H. Armistead, for two hundred and seventy-one dollars and forty-two cents, when the purchase of the interest of Mrs. Sandiford and J. H. Armistead in the Armistead place had been effected in the name of Mrs. Giddens, less a small credit paid on the latter note.

The Sprowls place thus acquired by exchange became the property of the community and of the heirs of Mrs. Giddens in the same proportion that the Armistead place was.

The addition to the Armistead place of the seventy-one acres bought of Brown, all of which was community property, gave the community an excess over the heirs in this place.

The heirs can not complain if we place this excess at one-eighth of the whole, when it is considered that the seventy-one acres was quite one-fourth in area and more than one-fourth in value of the Armistead place exchanged for the Sprowls place.

For the purpose of this settlement of the community, therefore, its interest in the Sprowls place will be computed at five-eighths and the interest of Mrs. Giddens' heirs—Robert A. and Albert S. Giddens—at three-eighths.

The community creditors must be settled with out of this five-eighths part first, and then one-half of the remainder, if any, will accrue to the heirs of the dead wife and the other half to the living husband.    Durham vs. Williams, 32 An. 162.

Pior, Tutor, vs. Giddens et als.

The only community creditors now are the heirs and D. M. Giddens—the latter because of the fact that after the dissolution of the community by the death of the wife he paid debts of the community, and thereby became subrogated to the rights of the creditors so paid. Shropshire vs. Creditors, 15 An. 705; Caire vs. Creditors, 45 An. 462; Coon vs. Stringer, 14 An. 727.

The heirs jointly hold the following claims agains the community:

| | |
|---|---|
| Amount for which the Briggs cotton sold ......... ......... ..... ..................... | $1,500 00 |
| With 5 per cent. interest from the time D. M. Giddens received it, December 6, 1871. | |
| Amount received by D. M. Giddens from Mrs. Louisa Armistead and applied to part payment of the seventy-one acres of land bought from Brown .... .. ..................................... ......... ......... .... . .............. | 300 00 |
| With 5 per cent. interest from date of purchase, January 21, 1871. | |
| Three-eighths of $879, paid or assumed by Beaird in the exchange between the Armistead place and the Sprowls place .. ............... ..... ........ | 329 61 |
| With 5 per cent. interest from December 20, 1875. | |
| Total principal................. ...., ................................................. ........... | $2,129 61 |

D. M. Giddens holds the following claims against the community on account of its debts paid by him after its dissolution, to-wit:

| | |
|---|---|
| Judgments of Julius Lisso, Gahagan, Perryman, Lisso & Bro., and Abney & Love, aggregating ...................... ................. . ... .. .......................................... | $1,426 18 |
| With 5 per cent. interest from (say) January 1, 1874. | |
| Amount of note given Mrs. Sandiford for her share of purchase money of interest in Louisa Armistead's succession.................. .... ... ............... ........ .. | 900 00 |
| With 5 per cent. interest (say) from January 1, 1874. | |
| (The testimony of D. M. Giddens makes it clear, we think that this note was paid after death of his wife) | |
| Amount paid (one-half) on account of purchase of seventy-one acres of land from Brown, paid by Giddens after death of his wife.. ...... ..... ..... | 300 00 |
| With 5 per cent. interest from January 21, 1874. | |
| Total principal............. ................................................. ..... .................. .......... ........ | $2,626 18 |

D. M. Giddens individually is entitled to no claim against the community for five-eighths of the eight hundred and seventy-nine dollars paid or assumed by Beaird in the exchange between the Sprowls place and the Armistead place, for the reason that that proportion of that sum was exclusively a community asset and was used to settle a community obligation. It was not the payment of a community debt out of his own funds.

The testimony of Giddens that other community debts than those mentioned in the act of exchange between Beaird and himself were assumed by Beaird and afterward paid by Stringfellow, when he purchased the Armistead place from Beaird, should have been ruled out on the objection made and for the reasons urged in the bill of exceptions. Besides, we do not think it established by the evidence received that other debts than those mentioned in the act of exchange were so paid.

It is claimed on behalf of the plaintiff that Giddens is entitled to other credits than those allowed for debts of the community paid by him, but we have not found that this is made clear by the testimony in the record.

As to the plea of prescription urged by defendants against claims set up on behalf of D. M. Giddens against the community, it suffices to say that no prescription runs against claims paid by the surviving spouse, who has the administration of the property, until a liquidation and settlement of the community. Succession of Blakey, 12 R. 155; Succession of Farmer, 32 An. 1037; McKnight, Administrator, vs. Calhoun, 36 An. 408.

The separate property of the wife was not administered by her during her lifetime. It was administered by the husband, D. M. Giddens. The debts incurred in cultivating the plantation were, therefore, community debts, and the revenues assets of the community.

After the death of the wife and dissolution of the community the cultivation of the plantation by the surviving spouse was for his own account—not that of the community, nor the heirs of the deceased spouse.

The community interest in the Sprowls place must be sold to pay the community debts as herein set forth, and the proceeds will be due to the surviving spouse and to the heirs of the deceased wife in the proportion of their respective claims.

The part accruing to D. M. Giddens, as well as his residuary interest in the community proceeds, if any, after payment of the debts, must be applied to payment of plaintiff's mortgage claim.

It is therefore ordered and adjudged that the judgment appealed from be amended as follows: The community of acquets and gains formerly existing between D. M. Giddens and Mary Jane Giddens, his wife, is decreed to be the owner of an undivided five-eighths interest in the real estate known as " the Sprowls place," acquired from J. H. Beaird by act of exchange executed on December 20, 1875.

It is further decreed that the community between said Giddens and his wife is indebted to Robert A. and Albert S. Giddens jointly, and to D. M. Giddens, respectively, in the sums, with interest, as hereinbefore stated.

It is further decreed that the five-eighths interest of the community

in the Sprowls place be sold under execution to pay the said indebtedness of the community, and in the event the proceeds of the sale thereof be not sufficient to settle said claims in full that the same be applied to their payment *pro rata.*

It is further decreed that the payment accruing to D. M. Giddens on the indebtedness due him by the community, as well as his residuary interest in the community proceeds, if any, after payment of the debts herein recognized, be applied first to the payment of plaintiff's special mortgage and judgment for eleven hundred dollars, with eight per cent. interest thereon from April 1, 1890, less a credit of eighty-eight dollars paid February 24, 1891, and costs of suit.

It is further decreed that, as thus amended and substituted, the judgment appealed from is affirmed, costs of appeal to be borne by defendants.

NICHOLLS, C. J., takes no part because of absence when case was argued.

MR. JUSTICE WATKINS recuses himself, having been of counsel.

### ON REHEARING.

BLANCHARD, J.   It is insisted, on behalf of R. A. and A. S. Giddens, that the judgment of the court decreeing that, in the event the proceeds of the sale of the community interest in the "Sprowls" place be not sufficient to settle the claims asserted on behalf of their father against the community, and those held by themselves, as heirs of their mother, against it, the same be applied to their payment *pro rata,* is erroneous, and that they are entitled to be paid the amount of their claim by preference.

D. M. Giddens himself asserts no claim in opposition to his sons. On the contrary, he is on their side of this controversy.   But his mortgage creditor, Pior, tutor, asserts it for him, and is entitled to do so under the law, forcing a settlement of the community, to the end that D. M. Giddens' interest therein, both as creditor and part owner, may be subjected to the satisfaction of his mortgage rights.

When the wife died the acceptance of the community by R. A. and A. S. Giddens, then minors, was, by operation of law, with benefit of inventory.   C. C. 977.   But time went on, there was no settlement of community affairs, the husband continued in possession and enjoyment of the community property, until, finally, the heirs of the wife became of age and demanded a settlement from their father.   He

15

made a settlement and turned over to them all the real property on hand, under the pretence that it was paraphernal in character and theirs by inheritance from their mother. This is the same property that is adjudged by this court to be community property to the extent of five-eighths thereof. They received it and took possession thereof as owners, ignoring entirely the rights of mortgage thereon claimed by Pior, tutor.

On coming of age, while demanding and receiving this settlement and entering into possession of all the property as the result thereof, they failed to renounce the community. C. C. 1013, 1014, 1017, 1020, 1032, 1033, 1050, 1054, 2410, 2423; Succession of Baum, 11 R. 314. And the serious effect of this omission in cutting them off from competition with this creditor for the husband's share of the community funds might be urged with force. Succession of Plantevignes, 28 An. 562; C. C. 988, 987, 994, 1009, 1010.

But a more equitable and legally satisfactory method of settling this controversy is at hand.

At the dissolution of the marriage, the community, as we have seen, was indebted to R. A. and A. S. Giddens in the sum of fifteen hundred dollars with five per cent. interest thereon from December 6, 1871, and in the further sum of three hundred dollars with like interest from January 21, 1871.

At the same time it owed the various creditors, mentioned in the opinion in chief, amounts aggregating $2626.18.

There was no registry of any legal mortgage affecting the community property. R. A. and A. S. Giddens could claim no priority of payment over the third persons who were creditors of the community along with themselves. The respective claims of these several creditors were, therefore, as between themselves of equal rank and concurrent against the community property.

The surviving husband, out of his own funds, paid all of these outstanding community debts, except that due R. A. and A. S. Giddens, and, by subrogation, became a creditor of the community for the claims so paid by him.

Thereupon he and his two sons, being the only creditors of the community and owning together in equal proportion (he one-half, they the other half) all the community property, their respective claims against the community *instantly* extinguished each other, *pro tanto*, by compensation and confusion. C. C. 2207, 2208, 2217, 2218;

Heirs of Gee vs. Thompson and Burns, 41 La. An. 353; Newman vs. Cooper, 50 La. An. —

The wife died in the latter part of 1873.  Taking the first of January, 1874, as the day when this extinguishment took place, the account at that time stood thus:

| | | |
|---|--:|--:|
| Aggregate amount of community debts paid by the husband | | $2,626 18 |
| The Briggs cotton claim due the heirs | $1,500 00 | |
| With 5 per cent. interest from December 6, 1871 to January 1, 1874 | 154 00 | |
| The amount due the heirs on account of money supplied by Mrs. Louisa Armistead and used in part payment of land bought from Brown | 300 00 | |
| With 5 per cent. interest from January 21, 1871, to January 1, 1874 | 44 00 | |
| Total due R. A. and A. S. Giddens | | 1,998 00 |
| Deducting this last amount from the sum of the community debts paid by the husband, a balance of | | $628 18 |

is left, and represents the amount due D. M. Giddens, on the first of January, 1874, by the community.

From this must be deducted the three hundred and twenty-nine dollars and sixty-one cents, being three-eighths of eight hundred and seventy-nine dollars, paid or assumed by Beaird in the exchange between the Armistead place and the Sprowls place, due the heirs as of date December 20, 1875, as shown in the opinion in chief.

This left a balance of two hundred and ninety-eight dollars and fifty-seven cents due the husband by the community, and the same is still unsettled.  It is due, however, without interest.  Succession of Fitzwilliams, 3 La. An. 489; Succession of Bringier, 4 La. An. 389.

The community share of the Sprowls place (see opinion in chief) must be sold to pay this balance, and the same, when realized, is to be applied on the debt due by D. M. Giddens to Pior, tutor, and secured by mortgage on his interest in the community share of the Sprowls place; and the residuary interest of the said D. M. Giddens in the proceeds arising from the sale of the community share of the Sprowls place, after payment of the said balance of two hundred and ninety-eight dollars and fifty-seven cents, must be applied to the payment of the remainder of the plaintiff's claim, whose mortgage is recognized as binding upon the remaining interest of said D. M. Giddens in the community share of said property.

It is, therefore, ordered that the decree hereinbefore rendered be amended so as to read as follows:

The community of acquits and gains formerly existing between D. M. Giddens and Mary Jane Giddens, his wife, be decreed to be the

owner of an undivided five-eighths interest in the real estate known as " the Sprowls place," acquired from J. H. Beaird by act of exchange executed on December 20, 1875.

It is further decreed that the community between said Giddens and his wife is indebted unto D. M. Giddens in the sum of two hundred and ninety-eight dollars and fifty-seven cents, for which judgment is hereby rendered in his favor.

It is further decreed that the five-eighths interest of the community in the Sprowls place be sold under execution to pay said indebtedness of the community, and to ascertain the residuary interest of said D. M. Giddens in said community share.

It is further decreed that the payment accruing to said D. M. Giddens on said indebtedness due him by the community, as well as his residuary interest in the community proceeds, be applied to the payment of plaintiff's special mortgage and judgment for eleven hundred dollars, with eight per cent. interest thereon from April 1, 1890, less a credit of eighty-eight dollars paid February 24, 1891, and costs of suit in both courts.

It is further decreed that, as thus amended and substituted, the judgment appealed from is affirmed.

Rehearing refused.

WATKINS, J., recused.